**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER STADULIS, <br><br> Plaintiff, <br><br> v. <br><br> JETBLUE AIRWAYS CORPORATION, <br><br> Defendant. | Civil Action No. 23-3695 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon JetBlue Airways Corporation's ("JetBlue") unopposed Motion to Dismiss *pro se* Plaintiff Christopher Stadulis's ("Plaintiff") Complaint (ECF No. 1-2) pursuant to Federal Rule of Civil Procedure[1] 12(b)(6) (ECF No. 4). The Court has carefully considered JetBlue's submission and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, JetBlue's Motion is granted.

I.  **BACKGROUND**

This action arises from the masking policies and procedures that JetBlue implemented during the COVID-19 pandemic. (*See* Compl., ECF No. 1-2, Ex. A.) In October 2020, Plaintiff booked a flight to travel from New Jersey to Aruba for a vacation with his wife. (*Id.* at *7.)[2] While

---

[1] Unless otherwise noted, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[2] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

making the reservation online, Plaintiff spoke with a representative from JetBlue, during which Plaintiff disclosed that he required exemptions to any face mask requirements due to certain medical conditions. (*Id.*) During this initial conversation, Plaintiff claims that the JetBlue representative instructed him to choose a "medical condition option" that, ostensibly, would have relieved him of the obligation to wear a mask during the flight. (*Id.*)

On December 2, 2020, however, Plaintiff received an e-mail message from JetBlue stating that "[p]er CDC recommendations, all JetBlue crewmembers and customers [two] years and older are required to wear a facial covering throughout the travel journey." (*Id.*) Later that day, Plaintiff contacted JetBlue and was informed that "as of August 10, 2020, disabled [individuals] with breathing issues or other issues that make it difficult for them to wear a mask, [were] no longer exempt" from the mask mandates. (*Id.*)

Plaintiff contacted JetBlue the next day, where he spoke with a representative and a supervisor to request an exemption from wearing a mask due to "several disabling health conditions that affect [his ability to] breath[e]." (*Id.* at *7-8.) Plaintiff also expressed a willingness to undertake specific "mitigation measures," in lieu of wearing a mask, to minimize the potential risk posed to fellow passengers, such as obtaining a negative COVID-19 test before boarding or wearing a face shield. (*Id.* at *7.) According to Plaintiff, the JetBlue representatives denied his accommodation request and cited CDC guidelines, which, at that time, required all passengers over the age of two, regardless of a disability, to wear a mask on the flight. (*Id.* at *7-8.)

Plaintiff filed a complaint with the Department of Transportation ("DOT"), and the DOT responded on December 4, 2020, that his complaint would be investigated. (*Id.* at *9.) The DOT later informed Plaintiff that its investigation revealed that JetBlue's policies violated the Air Carrier Access Act ("ACAA"). (*See* Compl. at *14.) The DOT stated that it would "pursue [a]

2

formal enforcement action or . . . notify [JetBlue] . . . of [its] determination and warn [JetBlue] that any similar incidents could lead to [a] formal enforcement action." (*Id.*)

In later correspondence, Plaintiff received an "Investigation Summary Sheet" from the DOT's general counsel which confirmed that JetBlue's actions violated the ACAA and its implementing regulations. 14 C.F.R. § 382 ("Part 382"). Per these regulations, an airline "must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability . . . ." (*Id.* at *16-18.) Specifically, the DOT determined that:

> JetBlue's mask policy that was in place at the time of [Plaintiff's] travel failed to provide an exemption for passengers with disabilities who cannot wear or safely wear a mask due to their disabilities. As a result, JetBlue did not conduct an individualized assessment to determine whether [Plaintiff] could not wear or safely wear a mask due to [his] disabilities and whether a reasonable accommodation could be made that would permit [Plaintiff] to fly safely without a mask. *Therefore, [the DOT] finds that JetBlue violated the ACAA and Part 382 in this instance.*

(*Id.* at *16.) The DOT also informed Plaintiff that "since the time of [the] incident, JetBlue [] informed [the Office of Aviation Consumer Protection] ["OACP"] that it . . . amended its mask policy to comply with the ACAA and Part 382." (*Id.* at *10.)

On June 12, 2021, Plaintiff took a "screenshot" of the following statement from JetBlue's website:

> Federal law requires masks to be worn by all travelers 2 years and older at all times throughout the flight including boarding and deplaning, and in the airport. Any individual who fails to comply with this law may be subject to denied boarding, removal from the aircraft[,] and/or penalties under federal law.

(*Id.*) Plaintiff alleges that JetBlue's statements were "deceitful" because there was "never a federal law requiring face masks on airlines" and JetBlue cited to fictitious laws to "impose the airlines mask policy and [to] deter people with breathing problems from even attempting to fly, which

3

would absolve the airline[] from any wrong[]doing." (*Id.* at *9-10.) Plaintiff took another screenshot from JetBlue's website on January 7, 2022, stating that "[c]ustomers with conditions which prevent them from wearing a mask should consider postponing travel." (*Id.* at *10.)

On December 2, 2022, Plaintiff commenced this action in the Superior Court of New Jersey, Law Division, Hunterdon County. (*See id.* at *2-3.) The Complaint brought several claims against JetBlue, including: (1) a violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1, *et seq.* (Count One); (2) intentional infliction of emotional distress ("IIED") (Count Two); (3) breach of contract under JetBlue's Contract of Carriage agreement (Count Three); and (4) a violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.* (Count Four). (*Id.* at *10-12.)

On July 11, 2023, Defendant removed[3] the action to this Court pursuant to 28 U.S.C. § 1441. (*See* Notice of Removal, ECF No. 1.) On July 13, 2023, Defendant filed a Motion to

---

[3] JetBlue's removal is predicated on diversity jurisdiction. (*See* Notice of Removal (citing 28 U.S.C. § 1332(a).) Complete diversity exists here: JetBlue is incorporated in Delaware and has a principal place of business in New York, and Plaintiff is a resident of New Jersey. (*Id.* at 3.) *See In re Benicar (Olmesartan) Prods. Liab. Litig.*, 198 F. Supp. 3d 385, 386 (D.N.J. 2016) ("[N]o plaintiff can be a citizen of the same state as any of the defendants at the time the complaint was filed and at the time of removal.") JetBlue notes that the $75,000 in controversy minimum requirement is met because Plaintiff issued a settlement demand of $125,000.00 to JetBlue via e-mail correspondence on July 6, 2023. (*Id.*, Ex. D.) The Court agrees with JetBlue's position that it may consider a plaintiff's settlement demand when assessing the amount in controversy. *Mitchell v. W. Union*, No. 06-949, 2007 WL 4440885, at *3 n.2 (D.N.J. Dec. 11, 2007) (finding the amount in controversy to be satisfied where a plaintiff's settlement demand "was well in excess of $75,000."); *Stockton v. TD Bank Grp.*, No. 13-2524, 2013 U.S. Dist. LEXIS 138534, at *6 (D.N.J. Sept 9, 2013) (noting that, "[c]ontrary to [p]laintiff's suggestion, settlement demands are also appropriately considered in determining the amount in controversy" and the plaintiff's $163,000 demand satisfied the amount in controversy requirement). Based on Plaintiff's prior settlement demand and the fact that Plaintiff has not put forth any evidence to oppose the amount in controversy, the Court finds that JetBlue has shown that the amount in controversy requirement is met here.

4

Dismiss the Complaint under Rule 12(b)(6) and Rule 9(b).[4] (*See* Def.'s Moving Br., ECF No. 4.) Defendant moves to dismiss on the following grounds: (1) Plaintiff's claims are preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 1713; (2) Plaintiff's state law claims are preempted by the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705; (3) Plaintiff's state law claims are preempted by the Federal Aviation Act ("FAA"), 49 U.S.C. § 40101, *et seq.*; (4) Plaintiff's state law claims are preempted by the Montreal Convention; and (5) Plaintiff fails to adequately plead a claim for IIED and punitive damages. (*Id.* at 15-30.) Defendant's Motion is unopposed.[5]

The Court turns to the merit of the pending Motion and for the reasons that follow, JetBlue's Motion is granted.

## II.     LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When analyzing a Rule 12(b)(6) motion to dismiss, the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578

---

[4] JetBlue cites Rule 9(b) with respect to Plaintiff's claim under the NJCFA (Count Four).

[5] On September 19, 2023, the Court entered a Text Order granting Plaintiff additional time, until October 2, 2023, to file his opposition brief. (ECF No. 10.) Plaintiff, nevertheless, did not oppose the Motion.

F.3d 203, 210 (3d Cir. 2009). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the "defendant[s] bear[] the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Finally, where a plaintiff proceeds *pro se*, the complaint must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). A *pro se* litigant, however, "is not absolved from complying with *Twombly* and the federal pleading requirements merely because [the litigant] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

**III.    DISCUSSION**

**A.    Preemption Under the ADA**

First, JetBlue argues that each of the claims in the Complaint relating to JetBlue's implementation of a transportation mask mandate during the ongoing pandemic fails to state a claim for which relief can be granted. (*See generally* Def.'s Moving Br.) JetBlue contends that Plaintiff's claims are legally deficient because each of the state law causes of action are preempted by the ADA. (*Id.* at 15-22.)

The ADA was enacted by Congress in 1978 "to prevent the states from re-regulating airline operations so that competitive market forces could function." *Gary v. The Air Grp., Inc.*, 397 F.3d

6

183, 186 (3d Cir. 2005) (citation omitted). The ADA seeks to avoid conflicting state laws and policies that would have adverse economic consequences on the goal of increasing competition among carriers. *Id.* To effectuate that intent, the ADA contains an express preemption clause, stating that:

> a [s]tate . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation[.]"

49 U.S.C. § 41713(b)(1).

The Supreme Court has interpreted the ADA's preemption clause broadly. *Gary*, 397 F.3d at 186 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992)). The ADA preempts any state law "having a connection with, or reference to airline 'rates, routes, or services.'" *Id.* (quoting *Morales*, 504 U.S. at 383-84). This requisite "connection exists either where 'the law expressly references the air carrier's prices, routes or services, or has a forbidden significant effect upon the same.'" *Id.* (citing *United Parcel Serv., Inc. v. Flores-Galarza*, 318 F.3d 323, 335 (1st Cir. 2003)). The term "services" within the ADA's preemption clause, includes, at the very least, the "prices, schedules, origins and *destinations of the point-to-point transportation of passengers*, cargo, or mail." *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 193 (3d Cir. 1998) (emphasis added). This definition encompasses the broad "Congressional intent of economic deregulation of the airline industry." *Id.*

At the same time, however, the Court must remain mindful of the "real limitations to the [ADA's] preemptive scope . . . ." *Gary*, 397 F.3d at 187 (quoting *Taj Mahal*, 164 F.3d at 191). In some cases, there are certain claims that "'may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." *Morales*, 504 U.S. at 390.

7

In *Gary*, for example, a copilot filed a claim under CEPA for retaliatory discharge and claimed that he was terminated after complaining that the pilot he was assigned to fly with was unqualified and did not take proper safety measures. 397 F.3d at 185. Because it was not clear if "the ADA elements of price or route" were involved, the Third Circuit was called upon to determine whether the "state law retaliation claim ha[d] a forbidden significant effect upon [the defendant's] service." *Id.* at 187 (internal quotation marks omitted). In finding that the plaintiff never refused a work assignment and his complaints "did not have the potential to interrupt service by grounding a particular flight," the Third Circuit concluded that the claim was "more properly viewed as comparable to a garden variety employment claim" which was not expressly preempted by the ADA. *Id.* at 189-90.

In short, the *Gary* decision instructs the court to assess whether there is sufficient nexus between the protected activity and an air carrier's service. *Id.* This is a fact specific inquiry that depends on the ability of the protected activity to disrupt the carrier's flight operations. *Id.* As it applies here, the central inquiry in this case is whether Plaintiff's claims have a "forbidden significant effect" upon an air-carrier's "point-to-point transportation," or if the connection to this service is "too tenuous, remote, or peripheral." *Id.* at 189.

       *i.*    *Count One (NJLAD)*

Under Count One of the Complaint, Plaintiff brings a claim against JetBlue for unlawful discrimination pursuant to the NJLAD. (*See* Compl. at *12.) JetBlue moves to dismiss this Count, as well as the other state law claims, on the basis that Plaintiff uses a state law to challenge an air carrier's "service", namely, the transportation of persons by aircraft, which is preempted by the ADA. (Def.'s Moving Br. 17); *see also* 49 U.S.C. § 41713(b)(1). Thus, as to the NJLAD claim

and the other state law claims presented, to be discussed, *infra*, the question boils down whether Plaintiff's claims are "related to" JetBlue's prices, routes, or services.

The NJLAD provides that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities and privileges of any place of public accommodation . . . without discrimination." N.J. Stat. Ann. § 10:5-4. Section § 10:5-12 states that "[i]t shall be an unlawful employment practice . . . [f]or any owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . [to] withhold from or deny to any person any accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on the account of [a] . . . disability . . . of such person[.]" N.J. Stat. Ann. § 10:5-12(f)(1). Plaintiff alleges that JetBlue is a "place of public accommodation" within the meaning of the NJLAD and has unlawfully discriminated or otherwise failed to accommodate him on account of his disabilities. (Compl. at *10-11.)

Here, Plaintiff seeks to impose liability under New Jersey's statutory laws for JetBlue's refusal to grant him an exemption to its mask mandate. The mask requirements affected all passengers, including Plaintiff, who were obligated to wear a mask while boarding and throughout the duration of the flight. (Compl. at *9.) This falls squarely within the definition of "services" under the ADA's broad preemption provision, as Plaintiff's claims pertain to JetBlue's policies that implicate, among other things, boarding procedures and "destinations of the point-to-point transportation of passengers."[6] *Taj Mahal*, 164 F.3d at 193. Thus, Plaintiff's discrimination claims

---

[6] This does not present a situation, as in *Gary*, *supra*, where the claims are "too tenuous, remote, or peripheral a manner' to have preemptive effect." *Morales*, 504 U.S. at 390.

9

under the NJLAD—predicated on JetBlue's masking policies—are preempted by the ADA because they relate directly to the airline's services.

Indeed, courts have reached the same conclusion that claims stemming from an airline's enforcement of a masking requirement fall under the "services" of the airline and are thus precluded under the ADA. *E.g.*, *Andreadakis v. CDC*, No. 22-52, 2022 WL 2674194, at *11 (E.D. Va. July 11, 2022) (finding an "'airlines' refusal to grant [the plaintiff] an exemption to the [m]ask [m]andate when selling him a ticket . . . fall[s] under the services provided by an airline" and was thus preempted by the ADA); *Montgomery v. Delta Air Lines, Inc.*, No. 22-10692, 2023 WL 2400743, at *5 (5th Cir. Mar. 8, 2023) (finding that "Delta's decision not to provide transportation to [the plaintiffs]" who refused to wear a mask, was "enough for [the court] to hold that the [ADA] preempts their claims[,]" as this falls under the category of "boarding and transportation" which are "undeniably 'services' under the [ADA].""); *Seklecki v. CDC*, 635 F. Supp. 3d 15, 19, 23-25 (D. Mass. Oct. 12, 2022) (finding that the plaintiff's state law claims against American Airlines, which required passengers to wear masks during the COVID-19 pandemic, were preempted by the ADA). Accordingly, Count One of the Complaint is dismissed with prejudice.

    ii.    *Count Two (IIED)*

Plaintiff's claims for IIED stem from having been "denied travel due to [his] disabilities" because of JetBlue's masking protocols. (Compl. at *11.) Specifically, Plaintiff's IIED claims are based on being denied accommodations—i.e., an exemption to wearing a face mask—during his conversations with JetBlue representatives. (*Id.*) JetBlue moves to dismiss Plaintiff's state law claims for IIED on the same grounds that they are preempted by the ADA and present state law tort claims that relate to an air carrier's "service." (*See* Compl. at *11; Def.'s Moving Br. 17-18.) The Court agrees.

10

The courts have preempted IIED claims under the ADA on these same circumstances. *See Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) ("[W]hether [plaintiff] suffered an IIED when a Northwest agent prohibited her from boarding a flight on the grounds that the State Department would not permit [plaintiff] to travel clearly falls within [the] definition of airline 'services'" under the ADA); *Montgomery*, 2023 WL 2400743, at *13 (finding that a passenger's claims for IIED, which stemmed from attempting to convince Delta gate agents that she was exempt from wearing a mask, was preempted by the ADA). Because requiring masks or face coverings on board relates to the furnishing of an air carrier's services, the Court finds that the IIED claim is preempted by the ADA. Count Two of the Complaint is therefore dismissed with prejudice.

### iii.   Count Three (Breach of Contract)

Under Count Three of the Complaint, Plaintiff brings a claim for breach of contract, which is predicated on JetBlue's Contract of Carriage. (Compl. at *11-12.) JetBlue argues that this claim, like the other state law claims presented, is preempted by the ADA. (Def.'s Moving Br. 18-23.)

In *American Airlines, Inc. v. Wolens*, the Supreme Court created a narrow exception to ADA preemption for "routine breach-of-contract" claims, holding that the ADA preemption clause does not extend so far as "to shelter airlines from suits . . . seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." 513 U.S. 219, 228, 232 (1995). In carving out a limited exception to ADA preemption for contractual claims against airlines, even when related to rates, routes, or services, *Wolens* explained that:

> The ADA's preemption clause . . . stops States from imposing their own substantive standards with respect to rates, routes, or services, *but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated [to]*. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the

11

> parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Wolens*, 513 U.S. at 232-33 (emphasis added); *see also Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 478 (D.N.J. 2014) (finding that the ADA does not preempt self-imposed contractual obligations).

Here, Plaintiff contends that JetBlue violated express and self-imposed terms that are outlined in its Contract of Carriage agreement. (Compl. at *11-12.) Pursuant to Section 32 of JetBlue's Contract of Carriage:

> All transportation is sold and all carriage is performed subject to compliance with all applicable government laws and regulations, including those of the Federal Aviation Administration and U.S. Department of Transportation, and all applicable Conventions, special contracts, treaties, and tariffs, many of which are not specified herein, but are nevertheless binding on [JetBlue] and all Passengers.

(See Declaration of Nicole Gurdoglanyan, Esq. ["Gurdoglanyan Decl."], Ex. 1, at 38.)

Plaintiff's Complaint references Section 32 to support his position that JetBlue was required to follow "all applicable state and federal laws[,]" which included "face mask exemptions and accommodations" for disabled passengers with breathing conditions. (Compl. at *12.) Plaintiff also lends support from the DOT's investigation, which confirmed that "JetBlue [was] in violation of the ACAA" and its implementing regulation, 14 C.F.R. § 382. (Compl. at *16.)

The DOT's correspondence to Plaintiff further stated that:

> The Department's Office of Aviation Consumer Protection (OACP) issued a notice titled, "Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear Masks While on Commercial Aircraft." The notice reminds U.S. and foreign air carriers of their legal obligation to accommodate the needs of passengers with disabilities when developing procedures to implement the federal mandate on the use of masks to mitigate the public health risks associated with COVID-19.

(*Id.* at *10.)

JetBlue responds that, while the Contract of Carriage provides that it was subject to "all applicable government laws and regulations" this does not necessarily mean that the airline "has undertaken an affirmative contractual obligation to comply with every possible federal law." (Def.'s Moving Br. 20-21 (citing various out-of-district cases).) Construing the allegations in a light most favorable to the *pro se* Plaintiff, it appears that Plaintiff seeks to impose terms of the Contract of Carriage agreement that are based on JetBlue's "self-imposed obligations." *Wolens*, 513 U.S. at 228, 232. JetBlue agreed that it would comply with "all applicable government laws and regulations, including those of the Federal Aviation Administration and [the DOT]." (Gurdoglanyan Decl., Ex. 1, at 38.) Plaintiff provided a copy of the DOT's "Investigation Summary" to his Complaint, which confirmed that JetBlue did not comply with the ACAA and its accompanying regulations. (Compl. at *15-17.) Since Plaintiff alleges here that JetBlue has violated its own terms of the Contract of Carriage, his claims appear to fall within the *Wolens* exception. *See, e.g., Levey v. Concesionaria Vuela Compania de Aviacion, S.A.P.I. de C.V.*,[7] 529 F. Supp. 3d 856, 864 (N.D. Ill. Mar. 29, 2021) (finding that the plaintiff "stated a facially plausible claim that [the airline] breached its own "self- imposed undertakings" by failing to follow a DOT rule, and the breach of contract claim thereby survives ADA preemption).

Even in cases where a plaintiff's breach of contract claim eludes ADA preemption, however, dismissal is still warranted where the complaint fails to state a plausible claim upon which relief may be granted. *See Gordon*, 73 F. Supp. 3d at 478 ("Even though [p]laintiffs' breach

---

[7] *Levey* involved similar circumstances where the plaintiff alleged that the airline breached its contract of carriage, stating, in the event of a flight cancellation, "alternate transportation or compensation will be provided to Passengers *in accordance with rules issued by the [DOT]*." *Levey*, 529 F. Supp. 3d at 864 (emphasis added).

13

of contract claim eludes ADA preemption, it nonetheless warrants dismissal because it fails to state a plausible claim."). "To state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." *Id.* (citing *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)).

Plaintiff clearly satisfies the first prong, as there is no dispute that the Contract of Carriage constitutes a contract between the parties. On the second prong, however, Plaintiff's factual allegations, accepted as true, do not support an inference that JetBlue breached its contractual obligations.

Section 24 of the Contract of Carriage, titled "Refusal to Transport," states that "Passengers will be refused transportation on [c]arrier for reasons including, but not limited to, the following":

> A. Passengers whose transportation on Carrier must be denied in order to comply with any government regulation . . . .
>
> B. Passengers whose transportation on Carrier is reasonably deemed by Carrier to be inadvisable or inappropriate due to special circumstances or concerns beyond the control of Carrier, including, without limitation, a Force Majeure Event.
> . . .
>
> E. A Qualified Individual with a Disability pursuant to 14 CFR Part 382 whose carriage may impair the safety of the flight or violate Federal Aviation Regulations.
> . . .
>
> F. Comfort and Safety: In the following categories where refusal or removal may be necessary for the comfort or safety of the Passenger(s) or other Passengers:
> . . .
>
>> (6) Persons who refuse to comply with instructions given by Carrier station management, supervisory personnel or uniformed flight crew[.]

(Gurdoglanyan Decl., Ex. 1, at 31-34.)

14

In addition, Section 24(G) of the Contract of Carriage states that "[t]he tickets of any Passenger refused passage or removed en[ ]route under the provisions of this Section 24 will be refunded in accordance with Section 26. Such a refund shall be the sole recourse of any Passenger refused passage or removed en[ ]route. UNDER NO CIRCUMSTANCES WILL CARRIER BE LIABLE TO ANY PASSENGER OR REFUSED PASSENGER FOR ANY TYPE OF INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES." (*Id.* at 34.)

Applying New Jersey's rules of contract interpretation, "the terms of an agreement are to be given their plain and ordinary meaning." *M.J. Pacquet, Inc. v. N.J. Dep't of Transp.*, 171 N.J. 378, 396, 794 A.2d 141 (2002). Attributing the plain meaning to the contract's terms, Plaintiff's breach of contract claim fails. In the Complaint, Plaintiff does not contend that JetBlue cancelled the subject flight, refused to honor his ticket, or prohibited him from boarding.[8] (*See generally* Compl.) To the contrary, JetBlue states that it informed Plaintiff of CDC guidelines applicable to his travel and, when Plaintiff did not go on the subject flight, he was "refunded" the money paid for the ticket. (Def.'s Moving Br. 19-20.) Accordingly, pursuant to Section 24(G) of the Contract of Carriage, Plaintiff would not be entitled to any further relief in connection with his claim for failure to transport.

Based on the foregoing, JetBlue's actions appear to comport with the parties' agreement. In the absence of a showing of an actionable breach, Plaintiff's breach of contract claim shall be dismissed without prejudice.[9] *See Gordon*, 73 F. Supp. 3d at 479. Plaintiff will be granted thirty

---

[8] For this reason, it is also dubious if Plaintiff can demonstrate the third element of his breach of contract claim, i.e., "damages" flowing from the alleged breach. In any case, this point is moot since, as stated, *infra*, Plaintiff cannot demonstrate that JetBlue breached the parties' agreement.

[9] Because Plaintiff has not shown a valid breach, the Court will not analyze the remaining elements of a breach of contract claim.

(30) days to file an Amended Complaint as to Count Three only. The Amended Complaint must be filed no later than January 5, 2024. If Plaintiff does not file an Amended Complaint within that time, the matter will be dismissed with prejudice.

        *iv.*     *Count Four (NJCFA)*

Finally, in Count Four of the Complaint, Plaintiff asserts that JetBlue violated the NJCFA. (Compl. at *12.) These claims are also preempted by the ADA. *See Wolens*, 513 U.S. at 228 (finding that the ADA preempted the use of Illinois' general consumer protection statute to challenge an airline's devaluation of frequent flyer earned miles); *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, No. 08-4333, 2009 WL 1652156, at *18 (D.N.J. June 10, 2009) (finding the ADA leaves no "room for a consumer fraud claim against an airline" and dismissing the NJCFA claim with prejudice); *Martin v. DHL Express (USA), Inc.*, 580 F. Supp. 3d 66, 73 (D.N.J. 2022) (consumer's state law claim for fraud against shipper of goods was preempted by the ADA); *Vail v. Pan Am Corp.*, 616 A.2d 523 (N.J. Super. Ct. App. Div. 1992) (same).[10] Accordingly, Count Four of the Complaint is preempted by the ADA and is therefore dismissed with prejudice.[11]

## IV.   CONCLUSION

For the reasons discussed above, JetBlue's Motion to Dismiss is granted. The Court dismisses Counts One, Two, and Four of the Complaint, and Plaintiff's claims for punitive

---

[10] Although the Court finds that it is unnecessary to address the issue based on the preemption findings, the NJCFA claim likewise fails to satisfy the heightened pleading standards prescribed under Rule 9(b).

[11] Because the ADA preempts Plaintiff's state-law tort claims, the Court need not address whether the FAA, ACAA, or Montreal Convention do the same. *Montgomery*, 2023 WL 2400743, at *13; (Def.'s Moving Br. 22-27.) Furthermore, the Court declines to reach the merits of Plaintiff's IIED claims because of their preempted status. *Id.*; (Def.'s Moving Br. 27-29.)

damages, with prejudice. JetBlue's Motion to Dismiss Count Three is dismissed without prejudice.

A corresponding Order accompanies this Memorandum Opinion.

                                                                                               */s/ Michael A. Shipp*
                                                                                               **MICHAEL A. SHIPP**
                                                                                               **UNITED STATES DISTRICT JUDGE**